# Anderson et al., Appellants, *v.* Amalgamated Association of Street and Electric Railway Employees.

*Equity—Injunction—Contracts—Damages—Bill filed after discontinuance of acts complained of.*

The General Equity Act (Act of June 16, 1836, P. L. 784) does not confer upon a court of equity the power to supervise the conduct of a corporation or association, when the acts, of which the complaint has been made, have been discontinued and the avowed purpose abandoned.

On a bill in equity praying for the assessment of damages, alleged to have been sustained through a strike instituted by the association a demurrer is properly sustained, where the strike had ended three weeks prior to the filing of the bill.

Argued April 26, 1921. Appeal, No. 91, April T., 1921, by plaintiff, from decree of Court of C. P. Allegheny County, July T., 1919, No. 1768, Sitting in Equity, sustaining demurrer to bill in equity in the case of A. E. Anderson, for himself and others, v. Amalgamated Association of Street and Electric Railway Employees, an unincorporated association of Detroit, Michigan, W. D. Mahon, President; William B. Fitzgerald, Vice-president; P. J. McGrath, Vice-president, and other officers and members thereof. Before ORLADY, P. J., PORTER,

HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Bill in equity to assess damages for loss suffered in strike instituted by defendant association. Before CARPENTER, J.

The defendants demurred to the bill and the court sustained the demurrer. Plaintiffs appealed.

The facts are stated in the opinion of the lower court sustaining the demurrer:

It is essential to the efficacy of a judicial decree that it emanate from a court having jurisdiction and where the jurisdiction is statutory it is indispensable that the jurisdictional fact or facts therein specified be pleaded.

In paragraph 3 of his bill, plaintiff says suit is brought pursuant to the provisions of the General Equity Act of June 16, 1836, P. L. 784, and calls attention to those provisions of the act which confer power to supervise and control corporations, other than municipal, and unincorporated societies, etc., and the power to prevent or restrain the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals.

The bill is subdivided into eleven paragraphs, exclusive of the prayer, and, exclusive of exhibits, covers 23 pages. Broadly stated, the complaint is that the defendants, other than the receivers of the Pittsburgh Railways Company, organized and put into effect a "strike," in consequence of which plaintiff and others sustained damages. The fifth paragraph of the bill states that the "strike" began at one o'clock a. m., May 15, 1919, and continued until about six o'clock p. m., May 18, 1919, a period of almost four days.

1. (In the view we take of the facts, as set out at length in the bill, it is not necessary to extend this discussion by detailed recitals. In our opinion, the bill does not present a case cognizable in equity.

That a court of equity may ascertain and award damages is not disputable, but jurisdiction is a prerequisite to the exercise of this incidental power. The basic wrong here alleged is the "strike," but it had spent its force, was a closed incident, three weeks before the bill was filed. There is no averment that the defendants threatened to renew the strike or that plaintiff apprehends a renewal thereof). Stripped of redundant verbiage, the bill charges that the "strike" of which complaint is made, was unlawful and injurious, and while it continued, caused loss and damage, part of which plaintiff sustained; or to be more specific plaintiff charges that the strike compelled him to expend seventy-four cents for car fare which he would not otherwise have expended, and four cents for extra copies of the "Pittsburgh Post," in all seventy-eight cents. He further says that other patrons of the Pittsburgh Railways Company suffered loss and damage and were subjected to discomfort and inconvenience.

2. (The sixth, seventh and eleventh paragraphs set forth in detail the matters to which we here refer. Having specified his personal financial loss, plaintiff estimates the loss resulting to the receivers of the Pittsburgh Railways Company and others at $2,035,000.78, or, exclusive of his personal loss, $2,035,000, and invites citizens of the United States to join him as plaintiffs. The record does not show that the parties who sustained the estimated loss of $2,035,000 have availed themselves of the opportunity thus afforded to recoup their loss, nor has any other citizen taken advantage of the privilege accorded).

3. (In view of the facts, we fail to see why the receivers were made defendants, but their joinder, if erroneous is harmless).

4. (The bill does not allege want of an adequate remedy at law, the prayer discovers its purpose and the demurrer challenges the jurisdiction. We have said jurisdictional facts must be pleaded, and by this is meant

present or threatened "acts contrary to law and prejudicial to the interests of the community or the rights of individuals."

The statute empowers the court to supervise and control corporations and unincorporated societies, etc., but the circumstances which require or justify the exercise of this power must be manifest. But we deem it unnecessary to discuss this phase of the question for reasons to which we have called attention). 5. (We are not convinced that the General Equity Act gives the court the power, at the instance of a stranger, to supervise the conduct of the corporation or association, where the acts of which complaint is made, have been discontinued and the avowed purpose abandoned. In this instance, the strike was history when the bill was filed, and in the absence of any averment that defendants threatened to renew it or that plaintiff had reason to apprehend a renewal, a decree directing that an injunction issue would be but "brutem fulmen" and the plaintiff in attempting to enforce it would "fight as one that beateth the air").

6. (The right to an account of the damages sustained is incidental, hence the right to an injunction must first be established. In the absence of a foundation, the bill cannot stand).

7. (Neither by oral argument nor in his elaborate and carefully prepared brief and the several supplements thereto, has plaintiff furnished convincing reasons why his bill should be sustained).

8. (And now, February 4, 1920, after argument and due consideration, the demurrers are sustained and the bill dismissed).

*Error assigned* was the decree of the court.

*A. E. Anderson,* for appellant.

*W. J. Brennen,* for appellees.

PER CURIAM, July 14, 1921:

The basis of this appeal is largely sentimental, with an alleged incidental loss of 78 cents to the appellant. The assignments of error urged upon our attention are fully and clearly answered in the opinion of the court below in sustaining the demurrer and dismissing the bill in equity.

The decree is affirmed.